IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | CHAPTER 7 |
| | * | |
| ABS VENTURES, INC., | * | |
|     Debtor | * | |
| | * | CASE NO. 1:12-BK-05520MDF |
| MARKIAN R. SLOBODIAN, Trustee, | * | |
|     Objectant | * | |
| | * | |
| v. | * | |
| | * | |
| CAPITAL FOR MERCHANTS, LLC, | * | |
|     Respondent | * | |

## OPINION

Before the Court is the Motion filed by Capital for Merchants, LLC ("Capital") for reconsideration of the order entered October 16, 2014, sustaining the objection of Markian R. Slobodian, Chapter 7 trustee for the estate of ABS Ventures, Inc. (the "Trustee"), to Capital's amended proof of claim. For the reasons that follow, the Motion for reconsideration will be granted, subject to further order of the Court.[1]

### I. Factual and Procedural Background

A petition under Chapter 7 of the Bankruptcy Code was filed on behalf of ABS Ventures, Inc. on September 19, 2012. Shortly thereafter, the Clerk of the Bankruptcy Court notified creditors not to file proofs of claim at that time. On March 28, 2013, the Clerk notified creditors that assets had been recovered by the Trustee and that creditors who wished to share in any distribution of funds were required to file a proof of claim on or before June 28, 2013. Capital

---

[1]The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This is a core, non-*Stern* proceeding under 28 U.S.C. § 157(b)(2)(B). This Opinion constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure ("Fed. R. Bankr. P.") 7052, which is applicable to contested matters pursuant to Rule 9014.

filed a proof of claim for $45,433.25 on the bar date that described the claim as fully secured by real estate and various items of personal property. Earlier the same month, the Trustee and Lawrence G. Frank ("Frank"), Chapter 7 trustee in the case of Stacey L. Heaps ("Heaps"), filed a joint motion for the sale of Debtor's real estate and of Heaps' personal property (the "Sale Motion").[2] Capital, as a secured creditor of both debtors, objected to the sale, asserting that the sale price was inadequate and would not pay Capital in full. The sale was approved on July 29, 2013 after a hearing on Capital's objection. The same day an amended order was entered, which included a statement that "Merchants for Capital, LLC [sic] may share in the unsecured creditor distribution" (the "Amended Sale Order").

On September 30, 2013, the Trustee and Frank filed a joint motion requesting the Court to approve a settlement agreement with Capital resolving its objection to the sale. Under the terms of the agreement, Capital received $1400 carved out of the fees due to the real estate agency that procured the buyer. The parties also agreed that $6000 of the proceeds of the personal property sale in the Heaps case would be escrowed by Frank with $3000 to be held for unsecured creditors of the Heap estate and $3000 to be paid to the Pennsylvania Department of Labor and Industry ("L&I") unless L&I waived its claim. In the latter event, Frank agreed to remit the funds to Capital in satisfaction of its second priority lien on the Heaps assets. L&I later waived its secured claim, and $3000 in proceeds were transferred to Capital. The settlement agreement was approved by the Court on October 24, 2013.

---

[2]Stacy L. Heaps was Debtor's majority shareholder. She also filed a petition under Chapter 7.

Approximately nine months later, the Trustee filed an objection to Capital's June 28, 2013 secured proof of claim. The Trustee asserted that the claim was no longer secured because the assets of the estate had been liquidated and senior liens had been paid. The Trustee also noted that Capital had received partial payment under the settlement agreement, but had failed to amend its claim to credit the funds received and to reclassify the claim as unsecured. The notice sent to Capital with the objection stated: "Attached to this notice is an objection to your proof of claim. **Your claim may be reduced, modified, or eliminated**. You should read this notice and the objection carefully and discuss them with your attorney, if you have one." (emphasis in original). The notice further provided that within thirty days [August 16, 2014], Capital was required to file either an amended proof of claim, a response to the objection, or a request for a hearing. If none of the three were filed, Capital was informed that the Court could grant the relief requested or disallow or modify the claim without further notice or hearing. Although Capital received proper notice, it failed to respond to the objection, file an amended claim, or request a hearing within thirty days.

On August 20, 2014, the Court sustained the Trustee's objection, indicating in the order that the claim was not secured and was overstated. Although the objection was sustained, the Court provided Capital with an additional fourteen days to file an amended claim, but warned that failure to comply with the order would result in total disallowance of the unsecured claim. On September 8, 2014, five days after the Court-ordered bar date, Capital filed an amended unsecured claim of $41,033.25. The Trustee objected to the amended claim as untimely. Capital, again failed to respond to the notice of the objection. On October 16, 2014, the Trustee's objection to Capital's amended claim was sustained by the Court and disallowed in full.

3

On October 29, 2014, Capital filed a motion with the Court requesting the Court to reconsider and vacate the default order disallowing Capital's amended proof of claim. The Trustee filed an objection to the motion for reconsideration and argument was heard by the Court on November 18, 2014.

## II. Discussion

While admitting that it failed to properly calendar and respond to the Trustee's objection to its original proof of claim, that it failed to file a timely amendment to its claim after the Court sustained the Trustee's objection and extended the deadline for an additional fourteen days, and that it failed to respond timely to the Trustee's objection to its amended proof of claim, Capital argues that its claim should be allowed. Capital admits that it was dilatory at several points, but argues that based on discussions surrounding the settlement agreement, the Trustee knew that Capital intended to assert an unsecured deficiency claim. Rather than filing an objection to the original proof of claim, Capital argues that the Trustee should have reclassified and reduced the claim. Capital also argues that while it failed to comply with the deadline set by the Court for amending the proof of claim, it did file an amended proof of claim a mere five days beyond the bar date set by the Court. Capital further argues that its failure to properly calendar deadlines, to comply with directives issued by the Court, and to become familiar with procedures set forth in the local rules is excusable.

The Trustee argues that Capital is attempting to circumvent a final order, which it failed to appeal. Once the Court entered the August 20, 2014 order giving Capital fourteen days to file an amended claim, the Trustee argues that Capital was required to follow one of three avenues on or before September 4, 2013: (1) comply with the order; (2) move for reconsideration; or (3) file

4

an appeal. Capital took no action before September 4, 2013. This error was further compounded by Capital's failure to respond to the Trustee's objection to the late filed amended proof of claim. Therefore, the Trustee argues, the Court should not reconsider the order denying Capital's amended claim as it was untimely. Further, the Trustee argues that the excusable neglect standard articulated by the Supreme Court in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993) does not apply in Chapter 7 cases and that there are no other equitable considerations that support setting aside the order disallowing Capital's unsecured claim.

   a. *Amending a timely filed proof of claim*

If an unsecured creditor wishes to participate in distributions made from a Chapter 7 bankruptcy estate, the creditor must file a timely proof of claim. *See* Fed. R. Bankr. P. 3002(a). In a Chapter 7 case, a proof of claim must be filed not later than ninety days after the first date set for the meeting of creditors except in six specified circumstances. In one of these circumstances, if a Chapter 7 trustee gives notice that there are insufficient assets to pay a dividend, the time period in which a claim must be filed does not start to run. If the trustee later files a notification that payment of a dividend appears possible, creditors must be given notice that they have ninety days to file proofs of claim. Fed. R. Bankr. P. 3002(c)(5).

In the within case, the Clerk notified creditors on March 28, 2013 that it appeared that assets would be available for distribution to creditors and that they had ninety days to file proofs of claim. In response to this notice, Capital filed a timely secured claim in the amount of $45,433.25. After the assets of both estates were sold and Capital received a distribution in partial satisfaction of its claim, the balance of its claim became unsecured. The Trustee argues that at this point, it was incumbent upon Capital to file an amended proof of claim for the deficiency, which Capital failed to do.

5

As the Trustee has asserted, the excusable neglect standard for late filed original proofs of claim does not apply in Chapter 7 cases. *Pioneer*, 507 U.S. at 389. The time for filing proofs of claim in Chapter 7 is governed strictly by Fed. R. Bankr. P. 3002(c) and not by Fed R. Bankr. P. 9006. Rule 9006(b)(1) authorizes a court to enlarge the time for performing certain acts or filing particular documents if the reasons for failing to meet a bar date may be characterized as excusable neglect. But once a timely claim has been filed, there is no absolute bar to filing an amended proof of claim if it is not a new claim disguised as an amended claim. Here, Capital filed a timely proof of claim. After its collateral was sold and it received partial payment of its claim, Capital's remaining claim was unsecured. The Trustee not only acknowledged Capital's right to file an amended claim, he sought to compel its filing. What Capital failed to do was file a amended proof of claim when a court order had been entered compelling its filing by a date certain.

Courts have predicated the right to file an amendment to a timely filed proof of claim on both 11 U.S.C.§ 502(j), which authorizes the reconsideration of claims, and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 15, which governs amendments to pleadings. *Brown v. Ameriquest Funding II, LLC (In re Brown)*, 431 B.R. 309, 314 (Bankr. D. Mass. 2010) (citing cases). Under Rule 15(a) an amendment may be made with the opposing party's consent or with the court's leave, and a court may grant leave "when justice so requires." Fed. R. Civ. P. 15(a)(2). An amended claim relates back to the date of the original claim if the substance of the amendment concerns the same transaction as the original claim. *In re Channakhon*, 465 B.R. 132, 141 (Bankr. S.D. Ohio 2012); *Washington v. SN Servicing Corp.(In re Washington)*, 420 B.R. 643, 646 (Bankr. W.D. Pa. 2009); *In re Delmonte*, 237 B.R. 132, 136 (Bankr. E.D. Tex. 1999). The

6

majority of bankruptcy courts addressing the issue have held that an amended claim filed to assert an unsecured deficiency when collateral has been liquidated after the bar date for filing claims is not a new claim. *In re Breaux*, 410 B.R. 236, 240 (Bankr. W.D. La. 2009) (citing cases). Courts have permitted creditors to amend their claims to assert an unsecured deficiency claim if the claim arises from the same transaction as the secured claim and if allowance of the amendment is not inequitable. *In re Channakhon*, 465 B.R. at 141-42; *In re Spurling*, 391 B.R. 783, 796 (Bankr. E.D. Tenn. 2008); *In re Tessier*, 333 B.R. 174, 176 (Bankr. D. Conn. 2005); *but see In re Hibble*, 371 B.R. 730, 734 (Bankr. E.D. Pa. 2007) (amended claim for deficiency filed after bar date did not relate back to timely filed secured claim because right to file deficiency claim not reserved); *see generally* Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th ed. § 284.1, at ¶ 19 (sec. rev. 2010, updated Oct. 15, 2014), *available at* Chapter13online. Because allowance of an amended claim is within the discretion of the bankruptcy court, an amended proof of claim may be disallowed if there is significant delay in filing that impedes administration of the estate. *In re George*, 426 B.R. 895, 900 (Bankr. M.D. Fla. 2010).

The parties do not dispute that Capital was permitted to file an amended claim to reclassify its claim as unsecured and to amend the amount due. Rather, the Trustee and Capital disagree as to whether the Court may authorize the late filing of the claim based on excusable neglect and, if so, whether Capital's inaction may be excused.

    b. *Reconsideration of a disallowed claim*

The Bankruptcy Code permits a court to reconsider the allowance or disallowance of a claim even after a final order has been entered if cause is demonstrated by the moving party. 11

7

U.S.C. § 502(j) ("A claim that has been allowed or disallowed may be reconsidered for cause.") A party seeking reconsideration by the bankruptcy court must file a motion requesting relief, and "[t]he court "after a hearing on notice shall enter an appropriate order." Fed. R. Bankr. P. 3008. Section 502(j) grants broad authority to reconsider the allowance or disallowance of a claim based on "the equities of the case." 11 U.S.C. § 502(j). *See In re Bernardes,* 267 B.R. 690, 693 (Bankr. D.N.J. 2001)*; In re Se. Fla. Telecomm., Inc.*, 234 B.R, 137, 141 (Bankr. M.D. Fla. 1998) (citing *Matter of Colley*, 814 F.2d 1008, 1010 (5th Cir. 1987), *cert. denied* 484 U.S. 898 (1987) ("The bankruptcy court has broad discretion in deciding whether to reconsider a claim.").[3] Section 502(j), however, provides no guidance as to what constitutes cause for reconsideration of a claim. To fill this vacuum, courts have looked to Rule 60(b) to supply the metric to make this assessment. *In re Princeton Office Park, L.P.*, 504 B.R. 382, 391-92 (Bankr. D.N.J. 2014); *Warren v. PNC Bank, Inc. (In re Warren)*, 499 B.R. 914, 919 (Bankr. S.D. Ga. 2013; *Amtech Lighting Servs. Co. v. Payless Cashways (In re Payless Cashways, Inc.)*, 230 B.R. 120, 137 (B.A.P. 8th Cir. 1999).[4]

---

[3]The Trustee argues that Capital may not seek reconsideration of the order disallowing its original claim after it failed to file an amended claim, which became a final order on September 3, 2014. In the context of a claim objection, however, this argument is erroneous. Neither § 502(j) nor Rule 3008 places a time limit on requests for reconsideration of claims. *Sheffield v. HomeSide Lending, Inc.(In re Sheffield)*, 281 B.R. 67 (Bankr. S.D. Ala. 2001). Rule 9024 explicitly provides that a motion for reconsideration of an order allowing or disallowing a claim entered without a contest is not subject to the one year limitation included in Fed. R. Civ. P. 60(c).

[4]Even when courts have not explicitly adopted the Rule 60(b) standards, they have applied analogous factors. *See In re Brown*, 431 B.R. at 314-15 (quoting *Holland v. EMC Mortg. Corp. (In re Holland)*, 374 B.R. 409, 428 (Bankr. D. Mass. 2007)) ("Reconsideration of both allowed and disallowed claims may occur at any time before a case is closed, but in such reconsideration the court must weigh the extent and reasonableness of any delay, or prejudice to any party in interest, the effect on efficient court administration and the moving party's good faith.")

Rule 60, incorporated into the Bankruptcy Rules at Rule 9024, provides in relevant part that the court may relieve a party "from a final judgment, order or proceeding" under one of five provisions. Fed. R. Civ. P. 60(b). When a default order has been entered after a trustee or debtor in possession objects to a claim, typically the creditor moves for relief under Rule 60(b)(1) on the basis of "mistake, inadvertence, surprise, or excusable neglect." The party pursuing relief has the burden to demonstrate by the preponderance of the evidence that its failure to act should be excused. *E.g., Jones v. Chemetron Corp.,* 212 F.3d 199, 205 (3d Cir. 2000); *In the Matter of Xpedior Inc.*, 325 B.R. 392, 398 (Bankr. N.D. Ill. 2005) (citing *In re Kmart*, 381 F.3d 709 (7th Cir. 2004) (movant has burden to prove factors establishing excusable neglect)). To determine whether the conduct of Capital's counsel is excusable, the Court must apply the *Pioneer* standards to the facts of this case.

In *Pioneer*, the Supreme Court held that occurrences constituting "excusable neglect" need not arise from circumstances beyond the creditor's control. *Pioneer,* 507 U.S. at 388. The use of the term "neglect" implies that acts of carelessness may be forgiven, but the qualification imposed by the adjective "excusable" suggests that some careless acts cannot be overlooked. *Id.* at 395. The Supreme Court adopted a test that considered the following four factors when assessing whether neglect is excusable: "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was with in the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 395. All factors must be considered in light of the totality of the circumstances and no one factor trumps the others. *In re Am. Classic Voyages Co.*, 405 F.3d 127, 133 (3d Cir. 2005).

9

Courts have adopted a similar approach when considering whether to allow amended claims. When considering whether an amended claim should be allowed, as contrasted with a late filed claim, if other parties will not be prejudiced, courts generally will freely allow amendments after the bar date has expired. *Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron)*, 419 F.3d 115, 133-34 (2nd Cir. 2005).

### 1. Prejudice to the trustee and the estate

Capital has the burden of proving that the estate will not be prejudiced if the amended proof of claim is allowed. *Pioneer* does not describe situations that would constitute prejudice so it has been left to the lower courts to flesh out its meaning in the context of a bankruptcy case. In *Manus Corp. v. NRG Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 188 F.3d 116, 127 (3d. Cir. 1999), the Third Circuit defined prejudice in narrow terms finding examples to be the "loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment." *Id.* (citing *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 656-57 (3d Cir. 1982)). "[P]rejudice is not merely the loss of an advantageous position, but must be something more closely tied to the merits of the issue." *Id*.

When considering the issue of prejudice under the *Pioneer* standards in the context of claims issues, courts have considered several factors including: (1) whether the debtor was aware of the claim; (2) whether payment of the claim would force the return of payments previously made; (3) whether payment of the claim would adversely affect the success of the reorganization; and (4) whether allowance of the claim would "open the floodgates to future claims." *Pro-Tec Serv., LLC v. Inacom Corp. (In re Inacom Corp.)*, No. 00-2426(PJW), 2004 WL 2283599, *4 (D. Del. Oct. 4, 2004) (citing *In re O'Brien Envtl.,* 188 F.3d at 126-28). *See also In re New Century*

*TRS Holdings, Inc.*, No. 07-10416(BLS), 2014 WL 925379, at *3 (Bankr. D. Del. Mar. 7, 2014). It is appropriate to modify these factors, however, because a debtor's effort to reorganize is not relevant in the context of a Chapter 7 case. The Court finds that consideration of the effect of the untimely amendment on efficient administration of the estate as described by the Massachusetts Bankruptcy Court in *In re Brown*, 431 B.R. at 314-15, is an appropriate alternative.

Here, the Trustee was aware of the unsecured deficiency claim and, in fact, had taken steps to compel Capital to file an amended proof of claim. Unlike the situation in *In re Pagett*, 119 B.R. 793, 799 (Bankr. D. Col. 1990), where a final order had been entered approving the trustee's final report, the Trustee has not filed a final report in this case. Further, no evidence was presented that allowing Capital's claim would "open the floodgates to future claims" as there are no other potential deficiency claims. At this point in the administration of the case, allowance of the amended claim would not impede the efficient administration of the estate. Accordingly, the Court finds that allowing Capital's claim would not prejudice the estate.[5] This factor supports granting Capital's motion for reconsideration.

    2. *Length of the delay*

"No formula exists to calculate precisely when a delay is simply too long to be considered 'excusable' within the excusable neglect analysis." *In re National Steel Corp.*, 316 B.R. 510, 518 (Bankr. N.D. Ill. 2004). The Third Circuit has opined that " [a]lthough it is proper to consider the delay's effect on the judicial proceedings, *Pioneer* teaches that we should consider the length of the delay in absolute terms." *In re O'Brien Envtl.*, 188 F.3d at 130. On the date that

---

[5]Lack of prejudice to the estate does not equate with no cost to other creditors. The laxity displayed by Capital's counsel required the Trustee to litigate Capital's claim repeatedly, which has created an expense to the estate that was completely avoidable.

the settlement agreement regarding the distribution of the sales proceeds was approved by the Court, October 24, 2013, Capital knew that the balance of its claim was unsecured and should have been aware that it needed to file an amended claim to participate in distributions from the estate. On July 14, 2014, more than eight months later, the Trustee filed an objection to the original secured claim. When the objection was sustained, a new bar date for filing an amended claim was set by the Court for September 3, 2014. Capital failed to meet this deadline, finally filing its amended proof of claim on September 8, 2014.

Capital argues that its amended claim was only five days late. This representation, however, is disingenuous. As stated in the notice accompanying the Trustee's objection, Capital was required to file an amended claim on or before August 16, 2014 or otherwise respond to the objection. When it failed to comply with this deadline, upon the Trustee's request, the Court further extended the deadline fourteen days. This second deadline was missed by five days.

Capital does not dispute that it received timely notice of the objection to its original proof of claim. Rather, Capital argues two points to excuse its untimely response. First, it seeks to shift responsibility to the Trustee to ensure that the claim was treated correctly. Second, Capital explains that counsel did not calendar the response date correctly (if at all), and no response was filed by the deadline set in the notice. Counsel for Capital admits that she realized her error when she received the Court's order granting an additional fourteen days to file an amended claim. But rather than immediately filing an amended claim, she did nothing. Having failed to calendar the new deadline, yet again an amended proof of claim was not filed. Finally discovering her second mistake on September 8, 2014, counsel filed the amended claim. Shortly thereafter, the Trustee objected to the amended claim. Capital's counsel stated in the motion for reconsideration that she

12

Case 1:12-bk-05520-MDF    Doc 89    Filed 12/08/14    Entered 12/08/14 14:16:50    Desc
Main Document      Page 12 of 17

believed that the Court would enter a scheduling order with a response deadline, although the local bankruptcy rules provide for a different procedure – the same procedure applied in the objection to the original proof of claim. Counsel was served with the same notice she received in regard to the objection of the original proof of claim stating that if she did not file an amended proof of claim, a response to the objection, or a request for a hearing within thirty days of the notice date, the claim was subject to disallowance without further notice. No response to the objection to the amended proof of claim having been filed within thirty days, the Court disallowed the amended claim. On October 29, 2014, Capital filed its motion for reconsideration of the order disallowing its unsecured claim.

*O'Brien Environmental* instructs that the absolute lapse of time between the deadline for taking some action and filing of a Rule 60(b) motion is as important as the effect the delay has on judicial administration. In the within case, Capital knew it was required to file an amended proof of claim on October 24, 2013. It was ten months later, after two bar dates had been set and missed, before the amended proof of claim was filed. Although Capital missed the second bar date by only five days, having been provided with two opportunities to file an amended proof of claim, the Court finds the delay to be excessive.

### 3. *Reasons for the delay*

The third *Pioneer* factor that must be considered by the Court is the reason for the delay, including whether the delay was within the reasonable control of the claimant. The Supreme Court in *Pioneer* and the Third Circuit in *O'Brien Environmental* found that inadequate notice was provided to the affected party in each case. In *Pioneer* and *O'Brien Environmental,* blame for the delay was assessed in part against the debtors. Capital does not dispute that it received a

13

copy of the objection to its original proof of claim, that it received notice of the deadline for filing a response, and that it knew it was necessary to respond by the specified date to protect its rights. Further, Capital does not dispute that it received notice of the Trustee's objection to the amended proof of claim and that it knew the deadline by which a response was required to be filed. The only explanation Capital advances to explain why it failed to file an amended proof of claim or take other action under the notice is that on two occasions it's counsel failed to calendar a response date and that its counsel assumed the Court would set a scheduling conference after the Trustee filed an objection to the amended proof of claim.[6]

*Pioneer* expressly held that parties will be "held accountable for the acts and omissions of their chosen counsel." *Pioneer*, 507 U.S. at 396. The negligence of Capital's counsel must be imputed to Capital. *See In re Am. Classic Voyages,* 405 F.3d at 134. Under the circumstances, I find that the reasons for the delay are inexcusable. Therefore, I find that this factor strongly supports denial of a finding of excusable neglect.[7]

---

[6]In the Court's view, the procedures set forth in Rule 3007-1 of the Local Bankruptcy Rules of the Bankruptcy Court for the Middle District of Pennsylvania are clear and precise. That being said, if the unique procedural posture of a particular case create uncertainty as to how a litigant should proceed, he or she may request clarification from chambers as described in Judicial Practices and Procedures available on the Court's website.

[7]At least three Circuits have held that the reason for the delay is the most significant factor in the *Pioneer* analysis. *See United States v. Torres*, 372 F.3d 1159, 1163 (10th Cir. 2004); *Graphic Communications Int'l Union v. Quebecor Printing Providence, Inc.*, 270 F.3d 1, 5 (1st Cir. 2001); *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 993, 996 (7th Cir. 1998). The Third Circuit, however, does not grant greater weight to this factor. In determining whether a claimant's failure to file a proof of claim prior to the bar date was excusable, however, in at least one case, the Court relied primarily on the "reason for the delay" factor. *In re American Classic Voyages*, 405 F.3d at 134.

*4. Good faith*

The final factor to be considered by the Court is the claimant's good faith. The Trustee has not questioned Capital's good faith, and the Court was presented with no evidence to suggest that the request for reconsideration was motivated by an improper purpose. Therefore, I find this factor is neutral when analyzing the totality of the circumstances.

After reviewing the *Pioneer* factors and considering the totality of the circumstances, I conclude that Capital has demonstrated excusable neglect primarily by establishing a lack of prejudice to the estate. The Court also considers the principle that amendments to claims should be freely allowed in the absence of prejudice to the estate. The Court reaches this conclusion although the "reason for the delay" factor weighs heavily in favor of the Trustee, and the "length of the delay" factor also favors his position. As I discuss below, however, while Capital's unsecured claim will be allowed, further proceedings will be held on whether Capital's claim should be equitably subordinated to other unsecured claims considering that Capital's dilatory actions required the Trustee to consume estate resources in the process of goading Capital to file its amended claim.

*c. Reclassification of Capital's claim*

Capital argues that because the Trustee acknowledged the existence of Capital's unsecured claim and the Amended Sale Order stated that Capital could participate in distributions from the estate, the Trustee was obligated to reclassify Capital's claim after the sale. A Chapter 7 trustee is the representative of a bankruptcy estate and is charged with representing the interests of the creditor body. 11 U.S.C. § 323(a); *In re Padget*, 119 B.R. 793, 798 (Bankr. D. Colo. 1990). If a purpose would be served, a trustee has the duty to examine claims and to object

15

to an improper claim. 11 U.S.C. § 704(5). It is not a trustee's duty, however, to correct or amend a claim so that a creditor may receive disbursements from an estate. In particular, it is not a trustee's responsibility to reclassify as unsecured a claim originally filed as secured. Even when a creditor has filed a timely secured claim, if it is later determined that a creditor is undersecured, it is incumbent upon the creditor to file an amended proof of claim if it desires to receive distributions from the estate. *In re Padget,* 119 B.R. at 797; *See also In re Channakhon*, 465 B.R. at 138 ("§704(5) does not require a Chapter 7 trustee to reclassify a secured claim as unsecured if the only purpose served by the reclassification is a reduction of the distribution to creditors who filed timely unsecured proofs of claim."); *Olympic Coast Inv., Inc. v. Crum (In re Wright)*, Nos. MT -08-1164-MoDH, 2008 WL 8462954, at *5 (B.A.P. 9th Nov. 3, 2008) ("[A]trustee does not have to make distributions to an undersecured creditor who did not amend its claim to assert or estimate the unsecured portion."), *aff'd* 329 Fed. Appx. 137 (9th Cir. July 15, 2009). Accordingly, it was Capital's responsibility to ensure that an amended proof of claim was filed if it wished to receive disbursements from the estate. The acknowledgment of Capital's unsecured claim in the Amended Sale Order did not excuse it from performing this duty.

### III. Conclusion

After reviewing the *Pioneer* factors, the Court has determined that the lack of prejudice to the estate, even in the light of the repeated acts of negligence committed by Capital's counsel, justify a finding of excusable neglect. As noted earlier, however, the inaction of Capital's counsel delayed administration of the estate and caused the Trustee to incur unnecessary expenses. Accordingly, while the amended claim will be allowed in full, the Court will issue an order directed to Capital to show cause why its claim should not be equitably subordinated to the

16

claims of other unsecured creditors to the extent of the administrative expenses incurred by the estate in litigating the objection to the original claim, the objection to the amended claim, and the within motion for reconsideration. An appropriate order will be entered.

**By the Court,**

_____
Chief Bankruptcy Judge

*Date: December 8, 2014*